UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATON CENTER, INC., a California corporation, | Case No.:  3:20-cv-00541-WQH-BGS |
| Plaintiff, | **ORDER** |
| v. | |
| CAREFIRST BLUECROSS BLUESHIELD, a corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

HAYES, Judge:

The matter pending before the Court is the Motion to Dismiss filed by Defendants CareFirst of Maryland, Inc., d/b/a CareFirst BlueCross BlueShield; Group Hospital and Medical Services, Inc., d/b/a CareFirst BlueCross BlueShield; and CareFirst BlueChoice, Inc., d/b/a CareFirst BlueCross BlueShield (all erroneously sued as CareFirst BlueCross BlueShield).  (ECF No. 6).

## I.   PROCEDURAL BACKGROUND

On February 24, 2020, Plaintiff Aton Center, Inc. commenced this action by filing a Complaint in the Superior Court of California for the County of San Diego, assigned case number   37-2020-00010069-CU-BC-NC,   against   Defendant   CareFirst   BlueCross BlueShield and DOES 1 through 10.  *See* ECF No. 1-5 at 2.  Plaintiff alleges that

Defendants "breached their agreements with Plaintiff and/or committed other wrongful acts and omissions by refusing to pay Plaintiff the represented and agreed upon/represented amount, but rather paid different and significantly lower (and inconsistent) amounts for treatment, leaving an unpaid balance of $238,309.12 owing from Defendants to Plaintiff which has caused Plaintiff substantial hardship." *Id*. at 4. Plaintiff brings the following eight causes of action: (1) breach of contract (oral agreement); (2) breach of contract (implied contract); (3) promissory estoppel; (4) quantum meruit; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) intentional concealment; and (8) violation of Business & Professions Code § 17200. *See id*. at 4-11. Plaintiff seeks "general, special, restitutionary and/or compensatory damages"; prejudgment interest; expenses, attorney's fees, "and other costs"; "an injunction prohibiting the conduct alleged herein and/or the appointment of a receiver over Defendants"; and "other and further relief as the Court may deem just and proper." *Id*. at 11.

On March 23, 2020, Defendants CareFirst of Maryland, Inc., d/b/a CareFirst BlueCross BlueShield ("CareFirst of Maryland"); Group Hospital and Medical Services, Inc., d/b/a CareFirst BlueCross BlueShield ("Group Hospital"); and CareFirst BlueChoice, Inc., d/b/a CareFirst BlueCross BlueShield ("CareFirst BlueChoice") (all erroneously sued as CareFirst BlueCross BlueShield) removed the action to this Court pursuant to 28 U.S.C. § 1332, diversity jurisdiction, 28 U.S.C. § 1441(b), and 28 U.S.C. § 1446. *See* ECF No. 1 at 2.

On April 23, 2020, Defendants CareFirst of Maryland, Group Hospital, and CareFirst BlueChoice and filed a Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 6). On June 1, 2020, Plaintiff filed a Response in opposition. (ECF No. 9). On June 5, 2020, Defendants filed a Reply. (ECF No. 10). On the same day, Defendants filed an Objection. (ECF No. 11).

## II.   ALLEGATIONS OF THE COMPLAINT

"Plaintiff is a corporation authorized to do and doing business in the City of Encinitas, County of San Diego, State of California … as an inpatient residential substance abuse treatment facility …." (ECF No. 1-5 at 2). Plaintiff "provided residential treatment care services which were or should have been covered by health insurance policies which … were provided, sponsored, supplied, underwritten, administered and/or implemented by Defendants …." *Id*. at 2-3. "Defendant CareFirst BlueCross BlueShield … is a corporation authorized to do and doing substantial insurance and/or health plan/policy administration business in the city of Encinitas, county of San Diego, and state of California, within the jurisdiction of this court." *Id*. at 3 (emphasis omitted).

Plaintiff's "patients were insured under health insurance policies/plans issued by … Defendants …." *Id*. "While the subject plans/policies were in effect, patients who were insured under plans issued by Defendants sought treatment with Plaintiff." *Id*. "Plaintiff took reasonable steps to verify available benefits, … including calling Defendants at the phone number provided by the Defendants …." *Id*. at 3-4. Plaintiff "was advised in these verification of benefit (["]VOB["]) calls that the policies provided for and Defendants would pay for inpatient treatment, based on the usual, customary and reasonable rate (["]UCR["]) and/or prior payment history." *Id*. at 4. "UCR is a certain and well-known term of art, and methodology for determining a payment rate, in the health care industry." *Id*. "Plaintiff admitted and treated the patients and submitted claims for payment in accordance with these representations and agreements." *Id*. "Based on the representations that the payment would be based on the UCR, prior payment history, authorization and agreement of the Defendants …, Plaintiff provided the agreed upon services and has performed all conditions, covenants and promises required to be performed in accordance with the agreements referred to herein above except, if applicable, those that have been excused, waived or are otherwise inapplicable." *Id*.

"Defendants breached their agreements with Plaintiff and/or committed other wrongful acts and omissions by refusing to pay Plaintiff the represented and agreed

3:20-cv-00541-WQH-BGS

upon/represented amount, but rather paid different and significantly lower (and inconsistent) amounts for treatment, leaving an unpaid balance of $238,309.12 owing from Defendants to Plaintiff which has caused Plaintiff substantial hardship." *Id*. "[A]t the time benefits were verified[,] Defendants had information regarding the different/lower daily payment amounts but withheld that information from Plaintiff." *Id*. "[A]n unconscionable injury would result to Plaintiff if Defendants are not required to pay the represented/agreed to payment rate based on the UCR and payment history …." *Id*. Defendants are "equitably estopped from denying the agreement/obligation to pay that amount." *Id*.

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2).  In opposing a defendant's Rule 12(b)(2) motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  Where the court considers the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010), abrogated on other grounds as recognized by *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017)).  "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id*. (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit ... but we resolve factual disputes in the plaintiff's favor …." *Id*. (first alteration in original) (internal quotation marks and citations omitted).  In other words, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citation omitted).

## IV.   CONTENTIONS OF THE PARTIES

Defendants contend that Plaintiff's Complaint should be dismissed for lack of personal jurisdiction.  Defendants contend that this Court lacks general jurisdiction because Defendant CareFirst of Maryland is a Maryland corporation with its principal place of business in Maryland and Defendants Group Hospital and CareFirst BlueChoice are District of Columbia corporations with principal places of business in the District of Columbia.  Defendants contend that this Court lacks specific jurisdiction.  Defendants contend that they did not purposefully avail themselves of the privilege of doing business in California.  Defendants contend that Plaintiff's claims for relief against Defendants do not arise out of forum-related conduct.  Defendants contend that exercising personal jurisdiction would be unreasonable.

Plaintiff contends that there is general jurisdiction over Defendants.  Plaintiff contends that Defendants conduct significant business in California by verifying benefits, authorizing services for Anthem Blue Cross ("Anthem"), and using Anthem as its agent for processing claims.  Plaintiff asserts that Defendants must have been involved in claims for hundreds, if not thousands, of insured members who were treated by Plaintiff and other California substance abuse treatment providers.  Plaintiff contends that there is specific jurisdiction over Defendants.  Plaintiff contends that Defendants have purposefully directed their activities at California and purposefully availed themselves of the privilege of conducting activities in California.  Plaintiff contends that Defendants purposefully direct California substance abuse treatment providers to contact Defendants to verify insurance benefits and obtain payment information.  Plaintiff contends that it relied on Defendants' misrepresentations regarding payment to admit seven patients for treatment. Plaintiff contends that exercising personal jurisdiction would be reasonable.

## V.   DISCUSSION

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Axiom Foods*, 874 F.3d at 1067 (citation omitted).  "California authorizes its courts to exercise jurisdiction 'to the full extent that such exercise comports with due process.'"

*Id.* (citation omitted); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). "Accordingly, 'the jurisdictional analyses under [California] state law and federal due process are the same.'" *Axiom Foods*, 874 F.3d at 1067 (quoting *Mavrix Photo*, 647 F.3d at 1223) (alteration in original). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant–general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016.

### 1. General Jurisdiction

"[A] finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801 (citation omitted). The standard for general jurisdiction "is an exacting standard …." *Id.* (citation omitted). For general jurisdiction to exist, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted). To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, the Court of Appeals considers their "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets …." *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1172 (9th Cir. 2006). In the case of a corporation, "[t]he paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler,* 571 U.S. at 137). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler,* 571 U.S. at 139 n.19).

Defendant CareFirst of Maryland "is incorporated in Maryland, with its principal place of business in Baltimore, Maryland." Lessner Decl. ¶ 5, ECF No. 6-2 at 3. Defendant Group Hospital "is incorporated in the District of Columbia, with its principal place of business in the District of Columbia." *Id*. at ¶ 6, ECF No. 6-2 at 3. Defendant CareFirst

BlueChoice is incorporated in the District of Columbia, with its principal place of business in the District of Columbia." *Id*. at ¶ 7, ECF No. 6-2 at 3. "Defendants are not subsidiaries or corporate affiliates in any way of any licensee of the BlueCross BlueShield Association whose service area is in California." *Id*. at ¶ 8, ECF No. 6-2 at 3.

"In the case of individuals who purchase their own insurance contracts, Defendants do not sell such contracts to individuals living outside of their service area." *Id*. at ¶ 9, ECF No. 6-2 at 3. "For employer groups, with a few exceptions that are not relevant in this case, Defendants will only insure or administer health plan benefits for businesses or entities that are headquartered in their service areas." *Id*. at ¶ 10, ECF No. 6-2 at 4. "Defendants also function as third-party administrators for certain self-funded health plans located in their service areas" but "Defendants administer such self-funded plans from within their home territories." *Id*. at ¶ 11, ECF No. 6-2 at 4.

"Defendants are not licensed to conduct business in California." *Id*. at ¶ 12, ECF No. 6-2 at 4. "Defendants do not own or rent any property in California." *Id*. at ¶ 14, ECF No. 6-2 at 4. "Defendants do not maintain any bank accounts in California." *Id*. at ¶ 19, ECF No. 6-2 at 5. "Defendants do not have an agent for service of process in California." *Id*. at ¶ 15, ECF No. 6-2 at 4. "[N]o employee, agent or representative of any Defendant travels to California for the purpose of conducting or cultivating business there." *Id*. at ¶ 18, ECF No. 6-2 at 4. "Defendants are not regulated by California insurance regulators or the California Department of Managed Health Care." *Id*. at ¶ 21, ECF No. 6-2 at 5. "Defendants do not direct advertis[e] [sic] into California." *Id*. at ¶ 16, ECF No. 6-2 at 4. "Defendants do not solicit either individuals or groups from California to purchase health insurance or administrative services products." *Id*. at ¶ 17, ECF No. 6-2 at 4.

The Court concludes that Plaintiff fails to present sufficient evidence demonstrating an "exceptional case" for "general jurisdiction [to] be available" in California. *Martinez*, 764 F.3d at 1070 (9th Cir. 2014) (quoting *Daimler,* 571 U.S. at 139 n.19). The Court further concludes that Plaintiff fails to present sufficient evidence to meet the "exacting

standard" necessary to establish general jurisdiction. *Schwarzenegger*, 374 F.3d at 801 (citation omitted).

### 2. Specific Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods*, 874 F.3d at 1068 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "Two principles animate the 'defendant-focused' inquiry." *Id.* (quoting *Walden*, 571 U.S. at 284). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the defendant *himself* creates with the forum state.'" *Id.* (quoting *Walden*, 571 U.S. at 284) (emphasis in original) (internal quotation marks omitted). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden*, 571 U.S. at 285). "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (quoting *Walden*, 571 U.S. at 286).

The Court of Appeals employs a three-prong test to assess whether a defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 802). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Axiom Foods*, 874 F.3d at 1068 (quoting *Schwarzenegger*, 374 F.3d at 802). "If the plaintiff meets that burden, 'the burden then

shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.'" *Id.* at 1068-69 (quoting *Schwarzenegger*, 374 F.3d at 802) (internal quotation marks omitted).

### a. Purposeful Availment

"We have typically treated 'purposeful availment' somewhat differently in tort and contract cases." *Yahoo!*, 433 F.3d at 1206. "Although some of [Plaintiff]'s claims sound in tort, all arise out of [Plaintiff]'s [alleged] contractual relationship with [ ] [D]efendants." *Sher*, 911 F.2d at 1362. "If a claim is dependent upon the existence of an underlying contract, the claim sounds in contract, as opposed to tort." *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996) (citation omitted).

"Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) (citations omitted). "The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents." *Hirsch v. Blue Cross Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). In other words, to have purposefully availed itself of the privilege of doing business in the forum, a defendant must "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362 (quoting *Sinatra*, 854 F.2d at 1195). "By taking such actions, a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (internal quotation marks and citation omitted). "In return for these 'benefits and protections,' a defendant must—as a quid pro quo—'submit to the burdens of litigation in that forum.'" *Id.* (quoting *Burger King*, 471 U.S. at 476). This requirement ensures that non-resident defendants "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, … or of the unilateral

activity of another party or a third person ….." *Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted).

"In the contract context ... the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident." *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (citing *Burger King*, 471 U.S. at 478). "[I]n contract cases, we typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 802) (second and third alteration in original). Where a defendant "freely negotiate[s]" a contractual obligation in another state, the effects of the defendant's actions in that forum may be considered "contemplated and bargained for." *Hirsch*, 800 F.2d at 1479 (internal quotation marks and citations omitted).

In this case, the Court must determine whether the California activities and contacts of a non-resident insurance company are sufficient for the exercise of specific personal jurisdiction in a California forum. The Court of Appeals addressed the exercise of personal jurisdiction over defendant insurance companies in *Hunt v. Erie Ins. Group* and *Hirsch v. Blue Cross, Blue Shield of Kansas City*.

In *Hunt*, the Court of Appeals addressed the exercise of personal jurisdiction over an east coast insurance company in a case in which a third-party beneficiary to an insurance policy moved to California for medical care after sustaining injuries in an automobile accident in Colorado. *See Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1245 (9th Cir. 1984). The plaintiff "received $75,000 from [the defendant insurance company] ten months after she first endeavored to receive benefits under the 'no-fault' policy. *Id*. at 1245-46. The defendant insurance company "mailed its refusal to assume unlimited liability for [the plaintiff]'s medical care to [the plaintiff]'s attorney in California." *Id*. at 1246. "Dissatisfied with the amount [the defendant insurance company] was willing to pay, [the plaintiff] brought suit in California state court for breach of contract, bad faith, breach of fiduciary duties, unfair practices, breach of statutory duties and declaratory relief." *Id*. The

defendant insurance company "removed the action to federal court on diversity grounds and moved to dismiss for lack of personal jurisdiction." *Id*. The plaintiff argued that personal jurisdiction existed for the following three reasons: (1) "the [ ] policy cover[ed] accidents occurring anywhere within the United States" and the "d[id] not specify the place where the benefits will be paid"; (2) the defendant insurance company "availed itself of the benefit of California's welfare programs" because public assistance had funded the plaintiff's medical needs after her move to California; and (3) the defendant insurance company "availed itself of the privilege of doing business in California by mailing into the State some payments on the policy and [by] its bad faith refusal to pay the amount [the plaintiff] contends was due." *Id*. at 1246-47. The Court of Appeals held that these contacts were insufficient to support the assertion of personal jurisdiction over the defendant insurance company. The Court found that the "failure to structure its policy to exclude the possibility of defending a suit wherever an injured claimant requires medical care cannot, in our view, fairly be characterized as an act by which [a defendant insurance company] has purposefully availed itself of the privilege of conducting activities in California." *Id*. at 1247. The Court further determined that "[t]o predicate jurisdiction on the basis of [the plaintiff's unilateral decision to] move to California, and the public assistance she received as a result, would shift the focus of the inquiry from the relationship among the defendant, the forum, and the litigation to that among the plaintiff, the forum, ... and the litigation...." *Id*. at 1248 (third and fourth alterations in original) (internal quotation marks and citation omitted). The Court concluded that "[w]e cannot agree that the requisite minimum contacts are established because a plaintiff's move into a state requires the defendant to send communications into that forum." *Id*.

In *Hirsch*, the Court of Appeals determined that the exercise of personal jurisdiction in a California forum over an out-of-state insurance company was appropriate. *See Hirsch*, 800 F.2d at 1476. In *Hirsch*, the defendant insurance company Blue Cross "contracted with" Southwest "to provide group health care coverage for Southwest's employees", "none of [who]m lived in California" at the time. *Id*. "Under the [contract], all of

Southwest's full-time employees were eligible to participate" and participation was not subject to "any geographical exclusions" or "restrict[ed] [by] the [contract]'s execution date." *Id*. "During the period covered by the [contract], Southwest added the [plaintiff] and two other new California employees to the Southwest group policy." *Id*. at 1476-77. The plaintiff "filled out enrollment application forms in California and returned them to Southwest's Kansas City office." *Id*. at 1477. "In return, the [plaintiff] received a Blue Cross membership card, generated by Blue Cross offices in Kansas City, with his California address written on its face." *Id*. "Southwest deducted health care premiums from [the plaintiff]'s payroll checks, and forwarded the payments to Blue Cross." *Id*. The plaintiff "allege[d] that in March 1984, Blue Cross refused to pay incurred medical expenses." *Id*. The plaintiff "filed an action in California state court, claiming breach of contract and bad faith", "Blue Cross removed the action to federal court on diversity grounds, and then filed a motion under Fed.R.Civ.P. 12(b)(2) to dismiss for lack of personal jurisdiction." *Id*. The Court of Appeals noted that Blue Cross might not have foreseen that its contract with Southwest would have effects in California at the time it signed the contract but determined that "Blue Cross, through its *own actions* in agreeing to provide coverage to Southwest and its California employee, [the plaintiff], created a continuing obligation to them, and a substantial connection with California." *Id*. at 1479-80 (emphasis in original) (citations omitted). The Court "conclude[d] that Blue Cross, by voluntarily and knowingly obligating itself to provide health care coverage to Southwest's California employees, in exchange for premiums partly derived from premiums paid by California residents, purposefully availed itself of the benefits and protections of that forum." *Id*. at 1480 (citations omitted).

In this case, the Complaint alleges that "Defendant CareFirst BlueCross BlueShield … is a corporation authorized to do and doing substantial insurance and/or health plan/policy administration business in the city of Encinitas, county of San Diego, and state of California, within the jurisdiction of this court." (ECF No. 1-5 at 3) (emphasis omitted). The Complaint alleges that Plaintiff's "patients were insured under health insurance

policies/plans issued by … Defendants ….” *Id*.  The Complaint alleges that “[w]hile the subject plans/policies were in effect, patients who were insured under plans issued by Defendants sought treatment with Plaintiff.” *Id*.  The Complaint alleges that “Plaintiff took reasonable steps to verify available benefits, … including calling Defendants at the phone number provided by the Defendants ….” *Id*. at 3-4.  The Complaint alleges that Plaintiff “was advised in these [VOB] calls that the policies provided for and Defendants would pay for inpatient treatment, based on the [UCR] and/or prior payment history.” *Id*. at 4.  The Complaint alleges that “Plaintiff admitted and treated the patients and submitted claims for payment in accordance with these representations and agreements.” *Id*.  The Complaint alleges that “Defendants breached their agreements with Plaintiff and/or committed other wrongful acts and omissions by refusing to pay Plaintiff the represented and agreed upon/represented amount, but rather paid different and significantly lower (and inconsistent) amounts for treatment, leaving an unpaid balance of $238,309.12 owing from Defendants to Plaintiff which has caused Plaintiff substantial hardship.” *Id*.

“Plaintiff … [i]s an out-of-network or non-par provider, in that it d[oes] not have a contract with any California-based licensee of the BlueCross BlueShield Association.” Lessner Decl. ¶ 25, ECF No. 6-2 at 5.  “Defendants do not encourage or direct its members to obtain treatment from non-participating providers.”  *Id*. at ¶ 26, ECF No. 6-2 at 6.  “Defendants’ preferred-provider option contracts generally contain financial incentives for members to utilize in-network providers.” *Id*.

“Patient A.A. was enrolled in an individual plan issued by [Defendant Group Hospital] through the District of Columbia exchange.”  *Id*. at ¶ 28, ECF No. 6-2 at 6.  “Patient A.A.’s address of record is in the District of Columbia.”  *Id*.  “Patient P.E. was enrolled in a self-funded government plan … administered by [Defendant CareFirst of Maryland].”  *Id*. at ¶ 29, ECF No. 6-2 at 6.  “Patient P.E.[’s] [sic] address of record is in Maryland.”  *Id*.  “Patient J.H. was a dependent of someone enrolled in a self-funded government plan … administered by [Defendant Group Hospital].”  *Id*. at ¶ 30, ECF No. 6-2 at 6.  “[A]t the time he first enrolled in the plan through his father as a dependent

beneficiary, Patient J.H.'s address of record was in Maryland." *Id.* "[A]t some point after Patient J.H. enrolled in the plan, he moved to California." *Id.* "Patient A.K. was enrolled in an individual plan issued through the Maryland exchange by [Defendant CareFirst] BlueChoice." *Id.* at ¶ 31, ECF No. 6-2 at 7. "Patient A.K.'s address of record is in Maryland." *Id.* "Patient S.M. was enrolled in a self-funded, employee benefit plan … administered by [Defendant CareFirst of Maryland]." *Id.* at ¶ 32, ECF No. 6-2 at 7. "Patient S.M.'s address of record is in Maryland." *Id.* "Patient F.T. was enrolled in an individual plan issued through the Maryland exchange by [Defendant Group Hospital]." *Id.* at ¶ 33, ECF No. 6-2 at 7. "Patient F.T.'s address of record is in Maryland." *Id.* "Patient S.W. was enrolled in self-funded employee benefit plan … administered by [Defendant Group Hospital]." *Id.* at ¶ 34, ECF No. 6-2 at 7. "Patient S.W.'s address of record is in the State of Washington." *Id.* "Defendants did not direct any of those members to obtain services from Plaintiff." *Id.* at ¶ 35, ECF No. 6-2 at 7.

In this case, Plaintiff contends that Defendants have availed themselves of the privilege of doing business in California by engaging in VOB phone calls with Plaintiff, issuing some payments for Plaintiff's substance abuse treatment services, and refusing to pay the amount Plaintiff contends is due. *See Hunt*, 728 F.2d at 1247 ("Hunt contends two other contacts demonstrate Erie has intentionally availed itself of benefits from the State…. Erie availed itself of the privilege of doing business in California by mailing into the State some payments on the policy and its bad faith refusal to pay the amount Hunt contends was due."). Unlike in *Hirsch*, the Complaint in this case fails to allege and Plaintiff fails to present sufficient evidence to "make a prima facie showing" that Defendants "purposefully availed [themselves] of the benefits and protections of" California by "voluntarily and knowingly obligating [themselves] to provide health care coverage to [ ] California employees, in exchange for premiums partly derived from premiums paid by California residents …." *Mavrix Photo*, 647 F.3d at 1223 (citation omitted); *Hirsch*, 800 F.2d at 1480; *see also Hajjar v. Blue Cross & Blue Shield of Texas*, No. SACV09-00362-CJC(JTLx), 2009 WL 2902482, at *4 (C.D. Cal. Sept. 10, 2009) ("Ms. Hajjar asserts that BCBST

availed itself of the privilege of conducting activities in California by collecting premiums from her while she resided in California, by providing access to its network providers in California and Arizona, and by paying claims for medical care rendered in California.  Ms. Hajjar is correct.").

The Court of Appeals has stated that the "mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  *Hunt*, 728 F.2d at 1248 (internal quotation marks and citation omitted).  The Complaint in this case fails to allege and Plaintiff fails to present sufficient evidence to "make a prima facie showing" that Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within" California.  *Mavrix Photo*, 647 F.3d at 1223 (citation omitted); *Schwarzenegger*, 374 F.3d at 802 (internal quotation marks and citation omitted); *see also Aylward v. SelectHealth, Inc.*, No. 18cv494-WQH-MDD, 2018 WL 3615873, at *7 (S.D. Cal. July 26, 2018) ("In this case, Plaintiff provides uncontroverted factual allegations and evidence sufficient to make a prima facie case that Aylward did not unilaterally seek treatment in California…. Plaintiff alleges that Aylward sought and received treatment at UCSD only upon receiving authorization from Defendants.  Plaintiff alleges that Defendants then specifically authorized a consultation, lung transplant work-up and evaluation, and a lung transplant at UCSD.  Additionally, Plaintiff provides copies of multiple communications between Defendants and UCSD coordinating Aylward's treatment at UCSD in exhibits attached to the declaration of Erica S. Phillips…. Plaintiff makes a prima facie showing that Defendants purposefully availed themselves of the privilege of conducting activities in California through Defendants' multiple authorizations of Aylward's treatment at UCSD in California and efforts to coordinate coverage for his medical care with UCSD under the health insurance plan.").

Plaintiff cites to *Moncrief v. Clark* in support of the contention that Defendants personally availed themselves of the benefits of California by allowing their insureds to seek treatment in California and verifying their benefits.  In *Moncrief*, "Moncrief was sued for legal malpractice arising from a failed purchase of farm equipment."  *Moncrief*, 238

3:20-cv-00541-WQH-BGS

Cal. App. 4th 1000, 1003 (2015).  "In response, Moncrief cross-claimed against Clark, the attorney who represented the farm equipment company, for misrepresentations he made in connection with the purchase." *Id.*  "Clark filed a motion to quash service of summons in response to Moncrief's cross-complaint, arguing that California lacked personal jurisdiction over him." *Id.* at 1004.  The Court of Appeal stated that "while Moncrief and Clark engaged in a single transaction, Clark targeted Moncrief with the specific purpose of inducing Moncrief's client to finalize the purchase of farm equipment from Texas Hill Farms." *Id.* at 1007.  The Court of Appeal found, in relevant part,

> We find that Moncrief has established that Clark purposely availed himself of the benefits of California such that California can exercise personal jurisdiction over Clark.  Clark's representations were made with the sole purpose of facilitating the sale between Moncrief's California client and Clark's Arizona client.  Clark's communications with Moncrief were purposely and voluntarily directed toward California "'so that he should expect, by virtue of the benefit he receive[d], to be subject to the court's jurisdiction based on' his contacts with the forum. [Citation.]"

*Id.* (alterations in original).

However, "[b]oth [the Court of Appeals] and the courts of California have concluded that ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (third alteration in original) (internal quotation marks and citations omitted).  The Court of Appeals has concluded that "[t]he making of telephone calls and the sending of letters to the forum state [are] legally insufficient to enable the court to exercise personal jurisdiction over the non-resident defendant." *Id.*  The Court of Appeals has further held that "phone calls" between a plaintiff healthcare provider and a defendant health insurance company "are insufficient evidence of purposeful availment" when the plaintiff healthcare provider "initiated the calls …." *Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Minnesota*, 787 F. App'x 417, 418 (9th Cir. 2019).  In these situations, the defendant health insurance

companies "d[o] not 'reach[ ] out' into California." *Id.* (quoting Walden, 571 U.S. at 285) (second alteration in original).

In this case, the Complaint alleges that Plaintiff "call[ed] Defendants at the phone number provided by the Defendants …." (ECF No. 1-5 at 3-4). The Complaint alleges that Plaintiff "was advised in these [VOB] calls that the policies provided for and Defendants would pay for inpatient treatment, based on the [UCR] and/or prior payment history." *Id.* at 4. The Court finds that the VOB phone calls from Plaintiff to Defendant fail to show that Defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State …." *Schwarzenegger*, 374 F.3d at 802 (internal quotation marks and citation omitted); *see e.g., Dokoozian Constr. LLC v. Exec. Risk Specialty Ins. Co.*, No. C15-703 MJP, 2015 WL 12085859, at *3 (W.D. Wash. July 28, 2015) ("A telephone call in which Colony allegedly verbally represented that it would pay a Washington firm selected by Dokoozian to defend Dokoozian (but subsequently failed to do so), meanwhile, falls far short of insurer actions in cases in which federal courts found personal jurisdiction, such as an collecting premiums from a resident of a state and paying benefits within the state to that resident … or explicitly contracting with forum-state health-care-management firms …."); *Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Minnesota*, No. CV 16-7042-DMG (AFMx), 2017 WL 7201870, at *6 (C.D. Cal. July 27, 2017) ("Healthcare Ally is left only with allegations in the Complaint, where it alleges that Minnesota Blue Cross 'informed and promised that [La Peer] would be paid for medical services' at certain market rates…. Such allegations, however, are not entitled to a presumption of truth as Minnesota Blue Cross presents contradictory evidence supported by a declaration. It submits the phone call transcripts that capture the conversations between La Peer and Minnesota Blue Cross for all five of the La Peer Patients. They demonstrate that while La Peer placed calls to obtain benefit information for its Patients, Minnesota Blue Cross made no affirmative promises of payment…. Given the above, the Court finds that Healthcare Ally has not established purposeful availment by way of Minnesota Blue Cross' affirmative promises of payment to the Medical

3:20-cv-00541-WQH-BGS

Providers."); *see also Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Massachusetts*, No. CV 2:18-05268 SJO (AGRx), 2018 WL 6340756, at *4-5 (C.D. Cal. Sept. 10, 2018) ("Unlike the defendant in *Peterson*, Defendant's actions went beyond merely responding to Medical Provider's telephonic inquiries about Patient's insurance policy or mailing correspondence related to payment. Here, Defendant used the telephone medium to confirm that Medical Provider was authorized to render Medical Care to Patient in a California facility, and affirmatively promised to pay Medical Provider at 70% of the UCR rate for such services…. For these reasons, the Court finds that the purposeful availment prong is met.").

The Court concludes that Plaintiff fails to present sufficient evidence to "make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo*, 647 F.3d at 1223 (citation omitted). The Court need not determine whether specific personal jurisdiction is lacking for other reasons because Plaintiff has not met its burden of establishing the first prong for specific jurisdiction. *See e.g., Dokoozian Constr.*, 2015 WL 12085859, at *3 ("Because the Court lacks personal jurisdiction over Colony under the first prong of the minimum contacts test, the Court does not reach the two remaining factors.").

## VI.   JURISDICTIONAL DISCOVERY

"A court may permit discovery to aid in determining whether it has in personam jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (citation omitted). "In granting discovery, the trial court is vested with broad discretion …." *Id*. (citation omitted). "Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (citation omitted); *see also Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) (stating that discovery is warranted only if the plaintiff "make[s] a 'colorable' showing," which is "less than a prima facie showing," of "'some evidence' tending to establish personal jurisdiction over the defendant."). "[W]here a plaintiff's claim of personal jurisdiction appears to be both

attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery ….'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (alterations in original) (citation omitted).  A court need not grant discovery based on "purely speculative allegations of attenuated jurisdictional contacts …." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011).

Plaintiff requests "discovery into the marketing of [Defendants'] plans to employers"; "discovery into the numbers of claims [Defendants] ha[ve] with other California providers"; and "discovery into the Blue Card program and how it relates to [Defendants] and the claims herein …." (ECF No. 9 at 10).  Plaintiff further requests "the opportunity to cross examine" Ms. Lessner. *Id.*  The Court finds that the discovery Plaintiff seeks would not change the Court's jurisdictional analysis at this stage in the proceedings.  Plaintiff's claim of personal jurisdiction is both speculative and based on attenuated jurisdictional contacts.  *See Getz*, 654 F.3d at 860.  Plaintiff fails to make a colorable showing of personal jurisdiction in this case.  *See Mitan*, 497 F. Supp. 2d at 1119.  The Court declines to exercise its discretion to permit jurisdictional discovery.

## VII.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendants CareFirst of Maryland, Inc., d/b/a CareFirst BlueCross BlueShield; Group Hospital and Medical Services, Inc., d/b/a CareFirst BlueCross BlueShield; and CareFirst BlueChoice, Inc., d/b/a CareFirst BlueCross BlueShield (all erroneously sued as CareFirst BlueCross BlueShield) (ECF No. 6) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's request for jurisdictional discovery is DENIED.

The case is dismissed without prejudice.

Dated:  August 3, 2020

Hon. William Q. Hayes
United States District Court

3:20-cv-00541-WQH-BGS